UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ARLENE M. BRODBECK,

                              Plaintiff,

v.                                                     5:05-CV-257
                                                     (NAM/GHL)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                              Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY, SHURTLIFF LAW FIRM<br>*Counsel for Plaintiff*<br>300 S. State Street<br>80 Exchange Street<br>700 Security Mutual Building<br>Binghamton, New York 13902-5250 | JAYA SHURTLIFF, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>100 S. Clinton Street<br>Syracuse, New York 13261-7198 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

GEORGE H. LOWE, United States Magistrate Judge

### REPORT AND RECOMMENDATION[2]

I.     **BACKGROUND**

    A.     **Procedural History**

        Plaintiff filed an application for disability insurance benefits ("DIB") and Supplemental

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit for Jo Anne B. Barnhart.

[2] This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Security Income ("SSI") on August 12, 2003. (Administrative Transcript ("T") at 48-50, Dkt. No. 6) The application was denied initially. (T. at 32-37.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on May 20, 2004. (T. at 39-41, 179-204.) On June 25, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 25-31.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 18, 2004.[3] (T. at 4-6.) Plaintiff commenced this action on February 28, 2005. (Dkt. No. 1.)

**B.    The Contentions**

Plaintiff makes the following claims:

(1)    The Commissioner erred in failing to give controlling weight to the opinion of a treating source. (Dkt. No. 9 at 13-16.)

(2)    The Commissioner erred by failing to do a function-by-function analysis when determining Plaintiff's residual functional capacity ("RFC"). (Dkt. No. 9 at 16-18.)

(3)    The Commissioner erred in determining that jobs existed in sufficient numbers in the national and regional economy that the Plaintiff could perform because the vocational expert ("VE") was given an improper hypothetical and consistency with the Dictionary of Occupational Titles ("DOT") was not ensured. (Dkt. No. 9 at 18-20.)

(4)    The Commissioner erred in finding that the Plaintiff's subjective complaints were

---

[3] Although the date stamp for the request for review by the Appeals Council states January 18, 2004, as the ALJ's decision was not rendered until June 2004, the Court assumes that the Appeal Counsel's denial of the request for review did not occur until January 2005.

2

not totally credible. (Dkt. No. 9 at 20-21.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed. Dkt. No. 12.

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

B.   **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003);

4

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

5

### III. THE PLAINTIFF

Plaintiff was forty-five years old at the time the ALJ's decision was rendered. (T. at 31, 48.) She completed the tenth grade and previously worked as a cashier/attendant at a fuel station, cab driver, and cashier/baker at a doughnut shop. (T. at 61, 64, 67.) Plaintiff alleges disability due to left and right cubital[4] tunnel syndrome and lower back pain. (Dkt. No. 9 at 2-3, T. at 60.)

### IV. THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff had severe degenerative disc disease of the lumbar spine and cubital tunnel syndrome, but they did not meet or equal a listed impairment; (3) Plaintiff's allegations of disabling symptoms were not totally credible; (4) Plaintiff had the residual functional capacity ("RFC") to perform the requirements of sedentary work, except that she could never repetitively use her upper extremities or perform frequent fine manipulation with her hands and she had to sit after standing every half hour, but there were no limitations in her ability to sit; (5) Plaintiff could not perform any of her past relevant work; and (6) using the testimony of a vocational expert as well as Medical-Vocational Rule 201.20, there were a significant number of jobs in the national economy that Plaintiff could have performed, thus she was not disabled. (T. at 30-31.)

### V. DISCUSSION

    **A. Whether the Commissioner Erred in Determining That the Opinion of Plaintiff's Treating Physician Regarding Plaintiff's RFC Was Entitled to Little Weight**

---

[4] Cubital refers to the elbow or ulna, which is "[t]he larger bone of the two bones of the forearm, extending from elbow to wrist on the side opposite the thumb." THE AMERICAN HERITAGE MEDICAL DICTIONARY 197, 853 (Revised ed. 2007).

6

Plaintiff argues that in determining her RFC, the ALJ improperly gave little weight to the opinion of her treating physician, Dr. Edgar Stanley, who treated her solely for her complaints of back pain. (Dkt. No. 9 at 13-16.) Defendant contends that the ALJ properly concluded that Dr. Stanley's physical medical source statement deserved little weight because he was not a treating physician and his findings were not supported by substantial evidence. (Dkt. No. 12 at 13-14.)

In this case, the ALJ found that Plaintiff was

> able to perform sedentary work.[5] She never repetitively uses the upper extremities or performs frequent fine manipulation with her hands. She must be able to sit after standing every half hour. Her ability to sit is not limited.

(T. at 29.)

In reaching this conclusion, the ALJ stated that Dr. Stanley's May 6, 2004 physical medical source statement deserved little weight. (T. at 28). According to the ALJ, Dr. Stanley indicated that Plaintiff had limitations with regard to her ability to stand and walk due to lower back pain. (*Id.*) However, the ALJ found that limitations of this severity were not supported by objective medical findings. (*Id.*) Specifically, the ALJ stated that no treating or examining physicians "reported findings more severe than low back tenderness with mild restriction of lumbar range of motion. No neurological or muscle strength deficits have been reported, and

---

[5] Sedentary work involves:
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

7

MRI revealed no nerve root involvement." (*Id.*)

The medical opinions of a treating physician[6] are to be given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2004). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2) (2004).

---

[6] "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant. 20 C.F.R. §§ 404.1502 & 416.902 (2004).

8

In this case, on May 6, 2004, Dr. Stanley completed a physical medical source statement. (T. at 169-73.) Dr. Stanley stated that Plaintiff's constant pain was severe enough to interfere with her attention and concentration but that she was cable of tolerating low stress jobs. (T. at 170.) He found that Plaintiff could stand and/or walk for less than two hours in an eight-hour workday, but she could only stand for thirty minutes at a time, and she could sit for four hours in an eight-hour workday but not more than two hours at a time. (T. at 171.) He also reported that Plaintiff would have to get up and walk every five minutes for five minutes during the workday as well as take unscheduled breaks every two hours. (Id.) Dr. Stanley then opined that Plaintiff could frequently lift and/or carry less than ten pounds, frequently climb stairs, occasionally twist and climb ladders, rarely stoop, and never crouch. (T. at 172.) He further stated that she had limitations with her vision[7] and that due to her overall impairments of lower back pain and cubital tunnel syndrome, Plaintiff would be absent from work more than four days per month. (Id.)

However, aside from this assessment, there is only one other medical record detailing any treatment or evaluations conducted by Dr. Stanley, and it was completed the same day as the assessment was rendered. In this report, Dr. Stanley stated that Plaintiff was in no acute distress, there was some tenderness to palpation over the spinous processes but there were no external lesions appreciated during the examination, her neurological examination was unremarkable, and the remainders were negative. (T. at 146.) Dr. Stanley prescribed Naprosyn and recommended aqua therapy. (Id.) It is clear that the findings from this examination do not establish the severity

---

[7] Due to the illegibility of Dr. Stanley's handwriting, the reasoning provided for the limitation in vision is difficult to discern. (See T. at 173.) However, it should be noted that in an August 2003 visit with an electrodiagnostic medicine consultant, Plaintiff denied having any vision problems. (T. at 99.)

9

of the condition that would necessitate the restrictions noted by Dr. Stanley in his physical medical source statement.

Dr. Stanley's physical medical source statement notes that Plaintiff was a patient at the West Side Health Center, where he worked, since November 2003. However, other doctors, and not he, examined Plaintiff during that period up to the May 2004 assessment. Evaluations from the other doctors for that time period do not corroborate the restrictions in Dr. Stanley's medical source statement.

On December 30, 2003, Dr. Marsha Snyder, at the West Side Health Center, evaluated Plaintiff and found that there was some pain with direct impression of the sacroiliac ligaments on the left and flexion was eighty percent of full range.[8] (T. at 154.) However, she also found that Plaintiff was in no acute distress, straight leg raises were negative, the anterior superior iliac spine and medial malleoli were symmetrical, the walk test was symmetrical and pain free, extension and lateral bending were full, toe and heel standing were normal, and sensation was grossly intact in the lower extremities. (*Id.*)

Subsequently, on February 23, 2004, Dr. Snyder examined Plaintiff and rendered virtually the same findings as in December 2003. (T. at 152.) Dr. Snyder stated that she was in no acute distress and had no obvious exaggerated lumbar lordosis or straining of the normal curve. (*Id.*) She noted that Plaintiff's range of motion of the back was fifty percent of full flexion but extension and lateral bending were full. (*Id.*) Dr. Snyder further stated that toe and heel standing were normal, straight leg raises were negative, pedal pulses were somewhat weak but she had

---

[8] In November 2003, Plaintiff was first seen by Dr. Snyder for complaints of back pain due to a fall she had taken off her bed. (T. at 156). Aside from Plaintiff's subjective account of her pain on this occasion, there does not seem to be any objective findings noted from that visit. (*Id.*)

good capillary refill of the feet, there were no sensory deficits demonstrated, and joint manipulations were pain free on the left with some discomfort on the right. (*Id.*) A magnetic resonance imaging ("MRI") was ordered and Plaintiff was prescribed Remeron and Ultram. (*Id.*)

On March 3, 2004, a scan of Plaintiff's lumbar spine was completed. The scan showed no disc herniation, stenosis, or significant neural foraminal narrowing in the L1-L2 region, mild degenerative facet change with normal neural foramina in the L2-L3 region, mild posterior disc bulge with no nerve root deviation or stenosis in the L3-L4 region, mild broad-based posterior disk osteophyte complex in the L4-L5 region, and mild degenerative facet change with no thecal sac deformity, nerve root deviation, or stenosis in the L5-S1 region. (T. at 149-50.) It was also noted that the heights of the lumbar vertebra appeared maintained. (T. at 150.)

In addition to this evidence concerning her lower back pain, Plaintiff's complaints regarding her cubital tunnel syndrome did not add any other severe restrictions indicated by Dr. Stanley. In fact, Dr. Michael P. Nancollas, Plaintiff's treating physician for her elbow problems, also completed a physical medical source statement.[9] (T. at 174-78.) He stated that Plaintiff never experienced pain severe enough to interfere with attention and concentration. (T. at 175.) Dr. Nancollas then found that any limitations regarding sitting, standing, and/or walking were not applicable because her injuries were related to her right and left upper extremities and that any need for unscheduled breaks or days per month likely to be absent from work as a result of the impairments were unknown. (T. at 176.) He opined that Plaintiff could occasionally lift ten pounds or less and rarely lift twenty pounds. (*Id.*) In regard to the repetitive use of her arms, Dr.

---

[9] Dr. Nancollas, unlike Dr. Stanley, treated Plaintiff from 2001 through 2004 and performed two surgeries on Plaintiff, right and left cubital tunnel release. (*See* T. at 105-06, 166, 67.)

11

Nancollas stated that Plaintiff could occasionally reach and handle. (T. at 177.) He further found that Plaintiff could frequently twist, stoop, crouch, and climb stairs and that she could occasionally climb ladders. (*Id.*) These findings are supported by Dr. Nancollas' medical records from 2001 through 2004 as well as from the opinions of other doctors. (*See generally* T. at 100, 105, 107-14, 119, 137, 157-58, 163.)

Moreover, Plaintiff's own testimony belies the severe restrictions noted by Dr. Stanley. Plaintiff testified that she had no problems sitting whereas Dr. Stanley noted that she could only sit for four hours in an eight-hour workday. (*Compare* T. at 189 *with* 171.) Plaintiff also testified that she could lift between ten and twenty pounds but Dr. Stanley opined that she could only lift and/or carry less than ten pounds. (*Compare* T. at 189 *with* 172.) Plaintiff further stated that she was able to bathe, get dressed, take care of herself, cook, clean the house, do work on the computer, and crochet. (T. at 189-90.)

Based on the evidence, the ALJ did not err in assigning Dr. Stanley's medical source statement little weight. The objective medical evidence, including Plaintiff's testimony, establishes that the ALJ's determination to accord the opinion little weight was supported by substantial evidence. Thus, it is recommended that the Commissioner's decision regarding the treating physician's opinion be affirmed.

### B.  Whether the Commissioner Erred by Failing to Do a Function-By-Function Analysis of Plaintiff's RFC

Plaintiff asserts that the ALJ erred in assessing her physical residual functional capacity assessment because the ALJ did not identify, on a function-by-function basis, Plaintiff's work-related abilities. (Dkt. No. 9 at 13-6.) Defendant contends that the ALJ properly evaluated and

determined Plaintiff's RFC limitations. (Dkt. No. 12 at 14-15.)

As stated previously, the ALJ found that Plaintiff was

> able to perform sedentary work. She never repetitively uses the upper extremities or performs frequent fine manipulation with her hands. She must be able to sit after standing every half hour. Her ability to sit is not limited.

(T. at 29.)

In determining the RFC under Step Four, an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r of Soc. Sec.*, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002). As stated in Social Security Ruling 96-8p,

> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

S.S.R. 96-8p, 1996 WL 374184, at *3.

Furthermore, the RFC assessment must address an "individual's ability to do sustained work-

13

related physical and mental activities in a work setting on a regular and continuing basis."[10] *Id.* at *1.

In this case, the ALJ erred in determining that Plaintiff could do sedentary work before assessing her work-related abilities on a function-by-function basis. The ALJ failed to specify the amount of pounds Plaintiff could lift and/or carry as well as the amount of time she could walk and stand. Although the ability to do sedentary work necessarily implies the most a claimant can do despite her limitations, such does not absolve the ALJ from his duty to outline, function-by-function, Plaintiff's restrictions in her ability to do work-related activities and whether or not she has the capacity to work on a regular and continuing basis. *See Brown v. Barnhart*, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr. 15, 2002).[11]

Accordingly, as the ALJ failed to properly evaluate Plaintiff's RFC, remand is recommended.[12]

    **C.    Whether the Commissioner Met His Burden of Proof at Step 5 of the Sequential Analysis in Finding That Other Work Exists in Significant Numbers in the National Economy That the Claimant Can Still Perform Based on the Hypothetical Presented**

Plaintiff argues that even though the vocational expert testified that jobs existed in the

---

[10] A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. 96-8p, 1996 WL 374184, at *1.

[11] Although the ALJ found that Plaintiff could not perform her past relevant work based on the RFC determination, the ALJ's failure to articulate the limitations on Plaintiff's ability to walk or stand may impact the Step Five evaluation.

[12] Remand, rather than reversal, is recommended as remand is warranted if "further findings or explanation will clarify the rationale for the ALJ's decision." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). This is clearly the case here as further findings are necessary. Moreover, there is no persuasive proof of disability in the record requiring reversal. *See id.*

national and regional economy that Plaintiff could perform, such testimony was based on a faulty hypothetical. (Dkt. No. 9 at 18-20.) Plaintiff further claims that the ALJ failed to ensure that the jobs listed by the vocational expert were consistent with the Dictionary of Occupational Titles. (*Id.*) Defendant states that the Commissioner's finding that jobs existed in significant numbers in the national economy is supported by substantial evidence. (Dkt. No. 12 at 16-18.)

When the testimony of a vocational expert is utilized, as was here, the ALJ must present a hypothetical that incorporates all of Plaintiff's impairments. *Juleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992) for the proposition that "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments"). If the ALJ fails to pose hypothetical questions that "include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Id.* (citing *Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994)).

In this case, the ALJ's hypothetical to the vocational expert failed to adequately present all of Plaintiff's functional limitations. While the ALJ incorporated the limitation of lifting no more than ten pounds to the RFC determination stated previously, the hypothetical still failed to address any limitation with regard to Plaintiff's ability to walk in an eight-hour workday. (T. at 197-98.) Furthermore, the ALJ did not lay out how many hours Plaintiff could stand in an eight-hour workday apart from noting that she would need to sit after standing one-half hour. (*Id.*) Thus, the ALJ erred in presenting his hypothetical to the vocational expert due to the failure to provide the VE with all of Plaintiff's functional limitations.

This Court is recommending remand with regard to the ALJ's finding as to Plaintiff's RFC because the ALJ failed to set forth Plaintiff's limitations on a function-by-function basis. Given that recommendation, it follows that this Court's view is that the hypothetical provided to the vocational expert was also in error and, therefore, remand would be appropriate to determine the availability of jobs in the national and regional economy based on revised RFC limitations.

In regard to the Dictionary of Occupational Titles, if "there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." S.S.R. 00-4p, 2000 WL 1898704, at *2, *Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions* (S.S.A. 2000). A reasonable explanation may be derived from "other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling." *Id.*

Here, the vocational expert testified about two possible jobs that exist in the national and regional economies that Plaintiff could perform. (T. at 199-200.) The VE seemed to base his assessment of the exertional and skill levels of these jobs from his own experiences in conducting onsite job analyses. (*Id.*) Within the ALJ's decision, he noted that the VE testified that these jobs were consistent with those listed in the DOT, his personal job analyses, and prevailing job studies. However, based on the testimony actually given, it is unclear whether the VE consulted the DOT in describing the exertional and skill levels of these jobs. It is also unclear as to whether his opinions based on his experiences conflicted with the DOT. Notwithstanding, because remand is recommended, in addition to revising the hypothetical, the

16

ALJ should also clarify whether a conflict existed between the personal experiences of the VE and the DOT listings.

### D.   Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were Not Totally Credible

Plaintiff claims that the ALJ failed to find whether her impairments could reasonably be expected to cause pain and instead evaluated the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). (Dkt. No. 9 at 20-21.) Defendant asserts that the ALJ properly assessed Plaintiff's credibility. (Dkt. No. 12 at 15-16.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529 & 416.929 (2004); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a) & 416.929(a) (2004). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.

20 C.F.R. §§ 404.1529(c) & 416.929(c) (2004).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) (2004). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In his decision, the ALJ stated that while Plaintiff's credibility was fair and her demeanor during the Hearing was consistent with the limitations established in the residual functional capacity, her testimony regarding the limits associated with her hands was exaggerated and not totally credible. In making this determination, the ALJ cited to medical evidence establishing that the existence of Plaintiff's medical impairments could reasonably be expected to produce the pain or other symptoms alleged. (T. at 28.) However, the ALJ felt that despite this fact,

18

Plaintiff's testimony regarding the extent of the pain and symptoms was exaggerated. Thus, due to the medical evidence, the ALJ needed only to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited her capacity to work.

Since the ALJ found that Plaintiff's allegations of disabling symptoms and limitations were not totally credible (*see* T. at 28.), it was incumbent on the ALJ to then assess the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), which he did. The ALJ reviewed and discussed the medications Plaintiff took, the treatment she received, her symptoms, daily activities, and measures taken to relieve the symptoms. (T. at 28.) Thus, the ALJ's findings are entitled to deference and the Court declines to recommend remand on this ground.

**WHEREFORE,** it is hereby

**RECOMMENDED,** that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[13] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

---

[13] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2004).

19

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 28, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge